**Jessica P. THOMAS, et al., Plaintiffs,**

v.

**BED BATH & BEYOND, INC., Defendant.**

**Civil Action File No. 1:05–CV–2963–TWT.**

United States District Court, N.D. Georgia, Atlanta Division.

May 17, 2007.

---

Robin Frazer Clark, Clark Goldner, P.C., Atlanta, GA, for Plaintiffs.

Christopher Todd Van Dyke, Jackson Lewis LLP, Atlanta, GA, for Defendant.

## *ORDER*

THOMAS W. THRASH, JR., District Judge.

This is an employment discrimination action in which the Plaintiff claims that she was not promoted because of her race and sex. It is before the Court on the Report and Recommendation [Doc. 55] of the Magistrate Judge recommending granting the Defendant's Motion for Summary Judgment [Doc. 33] as to Counts 1 and 4 and dismissing without prejudice Counts 2, 3 and 5. The Plaintiff's objections to the Report and Recommendation are without merit for the reasons set forth in the thorough and well reasoned opinion of the Magistrate Judge. The Court approves and adopts the Report and Recommendation as the judgment of the Court. The Defendant's Motion for Summary Judgment [Doc. 33] is GRANTED as to Counts 1 and 4. Counts 2, 3 and 5 are DISMISSED without prejudice.

SO ORDERED.

## ***ORDER***

C. CHRISTOPHER HAGY, United States Magistrate Judge.

Attached is the report and recommendation of the United States Magistrate Judge in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Civil Local Rule 72.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation within ten (10) days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the report and recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093 (11th Cir.1983).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED** this 10th day of April, 2007.

### FINAL REPORT AND RECOMMENDATION IN AN EMPLOYMENT DISCRIMINATION ACTION

Plaintiffs Jessica Thomas and Markel Thomas filed the above-styled civil action on November 17, 2005. In her Complaint [1], Jessica Thomas asserts that Defendant discriminated against her on the basis of her race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and failed to compensate her equally to her male counterparts in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1) ("Equal Pay Act"). She also asserts state law claims of negligent hiring, training and retention, as well as intentional infliction of emotional distress. Her husband, Markel Thomas, asserts a loss of consortium claim.

The action is before the Court on Defendant's Motion for Summary Judgment

[33]. For the reasons discussed below, the undersigned **RECOMMENDS** that Defendant's Motion be **GRANTED** and that judgment be entered in favor of Defendant on all counts of Plaintiffs' Complaint. Additionally, Defendant's Objection to the Affidavits of Jeff Jones, Emanuel Washington and Alan Robinson [51] is **OVERRULED.**

### I. *BACKGROUND FACTS*

Unless otherwise indicated, the Court draws the undisputed facts from Defendant's Statement of Undisputed Material Facts ("Def.'s SMF") [33] or Plaintiffs' Statement of Material Facts as to Which There Exist Genuine Issues of Fact ("Pl.'s SMF") [43]. If Plaintiffs have disputed a specific fact and pointed to evidence in the record supporting their version of events, the Court has viewed all evidence and factual inferences in the light most favorable to Plaintiffs, as required on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir.1993). Accordingly, the following facts are either not disputed or are viewed in the light most favorable to Plaintiffs.

Plaintiff Jessica Thomas ("Thomas") was working as a Victoria's Secret Store Manager when a Human Resources ("HR") Manager for Defendant Bed Bath & Beyond, Inc. ("BB & B") noticed her resume on Monster.com. Def.'s SMF ¶¶ 2, 4. Sue Voight, BB & B's HR Manager, called Thomas, who then submitted a job application to BB & B in October 2001. Def.'s SMF ¶¶ 2, 3. At that time, Thomas had been working at Victoria's Secret as a Store Manager for four years, managing 20 to 40 employees and earning an annual salary of $44,000. Def.'s SMF ¶¶ 4, 6.

Voight first interviewed Thomas by phone. Def.'s SMF ¶ 8. Voight then invited Thomas to interview in person with her and BB & B's District Manager, Steve Riley. Def.'s SMF ¶ 9. During this first in-person interview, Thomas told Voight and Riley that she was interested in leaving her position at Victoria's Secret because she wanted to enter a "big box environment"[1] like BB & B. Def.'s SMF ¶ 7.

After that first in-person interview, Riley brought Thomas back for a second in-person interview. Def.'s SMF ¶ 11. During both of the interviews, Thomas was told that each management-level candidate was hired as a Department Manager, and that BB & B's intention was to hire Department Managers who could eventually be promoted to Store Managers.[2] Def.'s SMF ¶¶ 9, 11. Thomas was told that the average Department Manager was promoted to Assistant Store Manager within three to six months, but that the actual time for promotion would depend upon Thomas' own job performance. Def.'s SMF ¶ 12. Thomas was not told how long it would take to be promoted from Assistant Store Manager to Store Manager. Def.'s SMF ¶ 13.

Thomas' interviews went well, and BB & B offered her a position as Department Manager. She accepted and began her new job on November 26, 2001, at a salary of $44,000. Def.'s SMF ¶¶ 14, 15. Thomas was initially placed at BB & B's Buckhead location, underneath Store Manager Paula Schlei. Def.'s SMF ¶ 16.

In March 2002, BB & B distributed a Relocation Survey to employees, asking whether they would be willing to relocate to other BB & B stores. Def.'s SMF ¶ 17. Thomas completed the survey, stating that she would be willing to transfer, though only to stores within the metropolitan Atlanta area. Def.'s SMF ¶ 17. Thomas understood that by limiting her willingness to transfer to within metro Atlanta, she might be limiting her promotion opportunities outside that area. Def.'s SMF ¶ 18; Plaintiffs' Response to Defendant's Statement of Material Facts ("Response to Def.'s SMF") [42] ¶ 18. She informed BB & B, however, that "metro Atlanta" meant she was willing to travel as far south as Macon and as far north as Cumming. Pl.'s SMF ¶ 28.

At some point, Riley told Thomas that she would need to accomplish a certain list of items before being promoted to key-holder.[3] Pl.'s SMF ¶ 14. There were items on this list that other, more senior individuals than Thomas had not been required to complete, and Thomas was unaware of any other Caucasian key-holder who had to complete the list of items.[4] Pl.'s SMF ¶ 14.

---

1. Though neither Plaintiff nor Defendant goes into detail about the meaning or significance of a "big box environment," the Court's own research reveals that the term refers to what is commonly called a "superstore," a large, freestanding retail store that has space for a high volume of merchandise.

2. The BB & B management hierarchy was as follows:

Regional Manager
↑
District Manager
↑
Store Manager
↑

Assistant Store Manager
↑
Department Manager

3. A "key-holder" refers to an individual who holds an Assistant Store Manager position or higher. Pl.'s Dep. at 72.

4. Plaintiff asserts this fact in her Statement of Material Facts. Defendant objects, stating that the facts in Plaintiff's paragraph 14 are not numbered separately according to Local Rule 56.1B(1), which states that "[e]ach material fact must be numbered separately and supported by a citation to evidence proving such fact." The Court finds that, while the

In May 2002, BB & B transferred Thomas to its McDonough store, where she remained a Department Manager. Def.'s SMF ¶ 19. In August 2002, after she had been employed with BB & B for nine months, Thomas became disappointed that she had not yet been promoted to Assistant Store Manager. Def.'s SMF ¶ 20. Having received a job offer from Marshall's Department Store that would have increased her salary, she submitted her resignation to BB & B. Def.'s SMF ¶¶ 20, 21.

Upon receiving Thomas' resignation, BB & B's Regional Manager, Salvatore Dimino, visited her and asked her not to resign. Def.'s SMF ¶¶ 22, 24. Dimino entreated Thomas, "I know you do a good job, and I see you growing with this company, and you can't leave. You will be making a mistake to leave." Def.'s SMF ¶ 24. He said he understood Thomas' frustration at not being promoted.[5] Pl.'s SMF ¶ 13. Dimino convinced Thomas to stay at BB & B, enticing her with a promotion to Assistant Store Manager of the McDonough store, and a salary increase to $51,000. Def.'s SMF ¶ 25.

After receiving her promotion, Thomas held the position of Assistant Store Manager for the "Softside" of the McDonough store, which involved bedding and bath products. Def.'s SMF ¶ 26. This meant she was one of three Assistant Store Managers who reported to the Store Manager. The other two Assistant Store Managers were responsible for the "Hardside" of the store and Operations.[6] Def.'s SMF ¶ 26 n. 2.

In January 2003, Thomas was diagnosed with endometriosis and took a medical leave of absence. Def.'s SMF ¶ 28. During her leave of absence, Riley (BB & B's District Manager) called her at home and offered to transfer her to the Buckhead store, where she would be Assistant Store Manager of "Softside." Def.'s SMF ¶ 28. Riley explained to Thomas that he needed "a strong assistant manager" in this position. Def.'s SMF ¶ 29. Thomas accepted the lateral transfer and started at the Buckhead store in February 2003. Def.'s SMF ¶ 31; Pl.'s SMF ¶ 15.

Several months later, Thomas told BB & B that she wanted to be Assistant Store Manager of Operations. Def.'s SMF ¶ 33. In accordance with her request, she was laterally transferred to this position, still at the Buckhead store, in September 2003. Def.'s SMF ¶ 34; Pl.'s SMF ¶ 16.

In October 2003, Thomas received her annual performance evaluation from Adam Kuhn, the Store Manager. Def.'s SMF

Local Rules do require facts to be numbered separately, this is not an adequate basis for disregarding a fact in an opposing party's Statement of Material Facts.

Rather, the acceptable responses to a Plaintiff's Statement of Facts are limited, and are listed in Local Rule 56.1B(3). Subsection (c) of that provision permits a defendant to object on the ground that a plaintiff has not complied with the requirements of 56.1B(1), but the Court reads that requirement as referring only to the four explicit requirements in 56.1 B(1), and not to the additional admonishment in that provision that material facts must be separately numbered. The Court thus considers Plaintiff's paragraph 14 to contain uncontroverted facts.

5. Plaintiff asserts this fact in her Statement of Material Facts. Defendant objects on the same grounds discussed *supra* in note 4. For the same reasons, Plaintiff's assertion is an uncontroverted fact for the purposes of this Report and Recommendation.

6. Thomas subsequently received a second raise, four months after she had been promoted to Assistant Store Manager and received her first raise. Def.'s SMF ¶ 27. Her new salary was approximately $1,500 higher than her previous $51,000 compensation. Def.'s SMF ¶ 27.

¶ 35. Kuhn gave her an overall rating of "very good," commenting that "overall, Jessica is extremely aggressive and well respected at [BB & B]. Jessica must now focus on 'impacting the building' in order to get to the next level at [BB & B]. In approximately 6–12 months, Jessica is very capable of getting there."[7] Def.'s SMF ¶¶ 36, 37. In December 2003, as a result of her good performance, BB & B increased Thomas' salary for the third time. Def.'s SMF ¶ 38.

At some point, Thomas spoke with Dimino (BB & B's Regional Manager) about why she had not yet been promoted to Store Manager. Def.'s SMF ¶¶ 41, 42. Dimino responded, "the time has to be right, you're going to get there, you're next on the list." Def.'s SMF ¶ 43. Thomas also complained several times to Riley about not being promoted.[8] Pl.'s SMF ¶ 20.

In April 2004, BB & B issued another Relocation Survey. Def.'s SMF ¶ 39. Thomas filled again filled out the survey, in which she indicated that she was willing to transfer to other stores, but only within "outer metro Atlanta." Def.'s SMF ¶ 39. Meanwhile, BB & B's Perimeter store had been destroyed by a fire and was subsequently rebuilt as a larger "concept store." Def.'s SMF ¶ 44. Kuhn, Thomas' boss at the Buckhead location, was transferred to the Perimeter store to be its new Store Manager, and he asked Thomas to transfer with him to be Assistant Store Manager of "Softside." Def.'s SMF ¶¶ 45, 46.

Thomas and Kuhn already had an "excellent working relationship," and Thomas felt honored when Kuhn asked her to transfer with him to the new Perimeter location. Def.'s SMF ¶¶ 47, 48. She knew the Perimeter location "was going to be a high-profile store, and [Kuhn] wouldn't have just taken anybody," because he was "very selective about who he wanted working with him." Def.'s SMF ¶ 47.

Thomas agreed to transfer with Kuhn to the new Perimeter store, where she began working in August 2004. Def.'s SMF ¶ 49. One month later, Thomas received a job offer with Toys R Us and submitted a letter of resignation to BB & B. Def.'s SMF ¶¶ 50, 51.

Dimino, BB & B's Regional Manager, visited Thomas a second time to try to convince her not to resign. Def.'s SMF ¶¶ 52, 53, 59, 60, 61. Dimino said, "you know, I know what it looks like is going on. . . . I know people get promoted here and there and it just doesn't seem right, but, you know, we promote people for different reasons." Def.'s SMF ¶ 55. He told Thomas that BB & B had plans to promote her to Store Manager, but that her promotion just might not occur as soon as she wanted it to. Def.'s SMF ¶ 54. Dimino asked Thomas, "what can I do to get you to stay?", and when she responded "at this point, nothing," he pressed, "no, seriously, you name it." Def.'s SMF ¶¶ 59, 60.

Thomas indicated that she had already decided to resign and nothing Dimino said would change her mind. Def.'s SMF ¶ 60. Nevertheless, Dimino told her to "think about it" and call him at home in several days. Def.'s SMF ¶ 62. He told her that if she ever needed to return, "the door is always open." Def.'s SMF ¶ 63. Thomas went to work for Toys R Us as a Store

---

7. Thomas notes that no one explained to her what "impacting the building" meant. Response to Def.'s SMF ¶ 37.

8. On one occasion when she did so, Riley told Thomas she needed to learn about bridal reg- istries before she could be promoted. Pl.'s SMF ¶ 21. Thomas felt that this was an excuse for not promoting her, however, as she believed she was already fully knowledgeable about bridal registries. Pl.'s SMF ¶ 21.

Director in September 2004, where she has since been employed.[9] Def.'s SMF ¶ 66. Thomas and Dimino never spoke again. Def.'s SMF ¶ 64.

On September 22, 2004, five days after she officially resigned from BB & B, Thomas filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that BB & B had "passed [her] over for promotion to Store Manager" on the basis of her race (African–American) and sex (female). Def.'s SMF ¶¶ 69, 70. She affirms that she received a right to sue notice from the EEOC and timely filed this action within ninety (90) days thereafter. Complaint [1] ¶ 13.

Because many of the Court's findings of fact are intertwined with its analysis of whether the parties have met their respective evidentiary burdens, the remaining relevant facts are set forth in the Discussion below.

## II. *DISCUSSION*

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is authorized when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 175, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Bingham, Ltd. v. United States*, 724 F.2d 921, 924 (11th Cir.1984). The movant carries this burden by showing the court that

there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its determination, the court must view the evidence and all factual inferences in the light most favorable to the nonmoving party.

Once the moving party has adequately supported its motion, the nonmoving party must come forward with specific facts that demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Generally, "[t]he mere existence of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When considering motions for summary judgment, the court does not make decisions as to the merits of disputed factual issues. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *Ryder Int'l Corp. v. First American Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir.1991). Rather, the court only determines whether there are genuine issues of material fact to be tried. Applicable substantive law identifies those facts that are material and those that are irrelevant. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputed facts that do not resolve or affect the outcome of a suit will not properly preclude the entry of summary judgment. *Id.*

---

**9.** Thomas' annual salary at Toys R Us is $72,000. Def.'s SMF ¶ 67. Thomas contends that her benefits at Toys R Us are "much less" than her benefits were at BB & B, but does

not cite evidence to support this fact. Pl.'s SMF ¶ 8; Defendant's Response to Plaintiff's Statement of Material Facts ("Response to Pl.'s SMF") [53] ¶ 8.

If a fact is found to be material, the court must also consider the genuineness of the alleged factual dispute. *Id.* An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250, 106 S.Ct. 2505. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505. Moreover, for factual issues to be genuine, they must have a real basis in the record. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Thus, the standard for summary judgment mirrors that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 259, 106 S.Ct. 2505.

## B. STANDARDS OF PROOF IN TITLE VII CLAIMS

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To prevail on a Title VII claim, a plaintiff must prove that the defendant acted with discriminatory intent. *Hawkins v. Ceco Corp.,* 883 F.2d 977, 980–981 (11th Cir.1989); *Clark v.*

*Huntsville City Bd. of Educ.,* 717 F.2d 525, 529 (11th Cir.1983). Such discriminatory intent may be established either by direct evidence or by circumstantial evidence meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Holifield v. Reno,* 115 F.3d 1555, 1561–62 (11th Cir. 1997); *Nix v. WLCY Radio/Rahall Comm.,* 738 F.2d 1181, 1184 (11th Cir. 1984). Additionally, statistical proof may be used as circumstantial evidence to establish intent. *Carter v. City of Miami,* 870 F.2d 578, 581–82 (11th Cir.1989).

Direct evidence is defined as evidence "that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." Black's Law Dictionary 596 (8th ed.2004); *see also Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1226 (11th Cir.1993); *Carter v. City of Miami,* 870 F.2d 578, 581–82 (11th Cir.1989); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 n. 6 (11th Cir.1987). Only the most blatant remarks whose intent could only be to discriminate constitute direct evidence. *Clark,* 990 F.2d at 1226; *Carter,* 870 F.2d at 581. Evidence that only suggests discrimination, *see Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1081–82 (11th Cir.1990), or that is subject to more than one interpretation, *see Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1083 n. 2 (11th Cir.1996), does not constitute direct evidence. "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1555 (11th Cir.1990); *see also Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 641–42 (11th Cir. 1998).

Evidence that merely "suggests discrimination, leaving the trier of fact to

infer discrimination based on the evidence" is, by definition, circumstantial. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081–82 (11th Cir.1990). Because direct evidence of discrimination is seldom available, a plaintiff must typically rely on circumstantial evidence to prove discriminatory intent, using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir.1997); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527–1528 (11th Cir.1997). Under this framework, a plaintiff is first required to create an inference of discriminatory intent, and thus carries the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *see also Jones v. Bessemer Carraway Medical Ctr.*, 137 F.3d 1306, 1310, *reh'g denied and opinion superseded in part*, 151 F.3d 1321 (11th Cir.1998); *Combs*, 106 F.3d at 1527.

Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination. *Jones*, 137 F.3d at 1310–1311; *Holifield*, 115 F.3d at 1562 (citations omitted); *see Burdine*, 450 U.S. at 253–54, 101 S.Ct. 1089. Once the plaintiff establishes a *prima facie* case, the defendant must "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Jones*, 137 F.3d at 1310. This burden is "exceedingly light" in comparison to the burden required if the plaintiff has presented direct evidence of discrimination. *Smith v. Horner*, 839 F.2d 1530, 1537 (11th Cir.1988). If the defendant is able to carry this burden and explain its rationale, the plaintiff, in order to prevail, must then show that the proffered reason is merely a pretext

for discrimination. *See Burdine*, 450 U.S. at 253–54, 101 S.Ct. 1089; *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 (11th Cir.1983).

A plaintiff is entitled to survive a defendant's motion for summary judgment if there is sufficient evidence to demonstrate the existence of a genuine issue of material fact regarding the truth of the employer's proffered reasons for its actions. *Combs*, 106 F.3d at 1529. A *prima facie* case along with sufficient evidence to reject the employer's explanation is all that is needed to permit a finding of intentional discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Combs*, 106 F.3d at 1529.

This *McDonnell Douglas–Burdine* proof structure "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *see also Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir.1987). The Eleventh Circuit has held that this framework of shifting burdens of proof is a valuable tool for analyzing evidence in cases involving alleged disparate treatment, but the framework is only a tool. *Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1184 (11th Cir.1984). The "ultimate question" is not whether a plaintiff has established a *prima facie* case or demonstrated pretext, but "whether the defendant intentionally discriminated against the plaintiff." *Id.*, 738 F.2d at 1184 (quoting *Aikens*, 460 U.S. at 713–14, 103 S.Ct. 1478); *see also Jones*, 137 F.3d at 1313. The plaintiff retains the ultimate burden of proving that the defendant is guilty of

intentional discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

## C. PLAINTIFF'S TITLE VII CLAIMS

■ Plaintiff does not contend that she has produced direct evidence of any discriminatory intent on behalf of Defendant; thus, her claim of discriminatory treatment rests purely on circumstantial evidence and must be analyzed under the *McDonnell Douglas–Burdine* framework.[10] Under this framework, a plaintiff can generally establish a *prima facie* case of unlawful discrimination under Title VII by showing that: (1) she is a member of a protected class;[11] (2) she was subjected to an adverse employment action by her employer; (3) she was qualified to do the job in question; and (4) her employer treated similarly situated employees outside her protected classification (*i.e.,* those of a different sex, race, or religion) more favorably than it treated her. *See McDonnell*

*Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *see also Wright v. Southland Corp.,* 187 F.3d 1287, 1290 (11th Cir.1999); *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997). Plaintiff states that she suffered two discriminatory adverse employment actions while she was a BB & B employee: (1) the failure to be promoted to Store Manager, and (2) constructive discharge.

### 1. Failure to Promote

With respect to her "failure to promote" claim, Thomas points to ten individuals outside her protected classes (African–American and female) who received promotions to Store Manager instead of her: (1) Ted Hounshell, (2) Brian Hutchins, (3) Darren Myers, (4) David Onyskiw, (5) Dave Carlson, (6) Suzanne Wood, (7) Joe Casella, (8) Ray Devilla, (9) Steve White, and (10) Roland Perelli. Def.'s SMF ¶ 71. Thomas contends that each of these promotions represents a position that she could have received, but did not.

10. Thomas argues in her Response Brief that her case should also be analyzed under the *Desert Palace v. Costa* mixed-motive framework. *Costa,* 539 U.S. 90, 123 S.Ct. 2148 (2003). The traditional *McDonnell Douglas–Burdine* framework is broad enough to encompass a mixed motive claim.

Under the *McDonnell Douglas–Burdine* framework, the Court examines whether there is evidence supporting the plaintiff's *prima facie* case; if so, whether the defendant has proffered a legitimate, nondiscriminatory reason for its decision; and if so, whether there is evidence demonstrating that the defendant's proffered reason is merely pretext. *See infra.*

If there is evidence that race was *a* factor in an employment discrimination action, although maybe not *the* factor, that would be evidence of pretext to this Court's mind that would be sufficient to defeat a motion for summary judgment. On the other hand, when a plaintiff has made a *prima facie* showing of discrimination but does not survive summary judgment, the Court has necessarily found that the plaintiff has failed to present sufficient evidence of pretext to support a jury

verdict that discrimination was either *the* factor or *a* factor in an adverse employment action.

As a result, whether the employer made its decision for a discriminatory reason alone, or for both discriminatory and legitimate reasons (i.e., a mixed motive case), the standard for summary judgment is the same.

11. Although courts continue to include the requirement that a plaintiff establish as part of a *prima facie* case that he or she is a member of a "protected class," it is clear that individuals of any sex, race, or religion may pursue claims of employment discrimination under Title VII. *See Wright v. Southland Corp.,* 187 F.3d 1287, 1290 n. 3 (11th Cir.1999) (*citing McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 278–80, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)). Thus, the key element of the *prima facie* case is establishing that persons outside of the plaintiff's protected classification (*i.e.,* those of a different sex, race, or religion) were treated more favorably by the employer. *See Wright,* 187 F.3d at 1290 n. 3.

### a. Thomas Has Failed to Satisfy Administrative Prerequisites With Respect to Eight Promotions

Defendant first argues that, with respect to eight of these ten listed promotions, Thomas has failed to satisfy the necessary administrative prerequisites. Specifically, BB & B posits that Thomas failed to exhaust her administrative remedies by not including five of the promotions in her EEOC Charge. Defendant also argues that these five promotions, plus three more, are barred by the statute of limitations because Thomas did not file her EEOC Charge within 180 days after the promotions occurred. Thus, contends BB & B, eight of the promotions should not be considered as part of her "failure to promote" claim.

### (1) Five Promotions Were Not Mentioned in Thomas' EEOC Charge

■ Title VII requires an employee to completely exhaust the administrative remedies available from the EEOC before filing suit in federal court. *Buffington v. General Time Corp.*, 677 F.Supp. 1186, 1192 (M.D.Ga.1988) (citing *Beverly v. Lone Star Lead Constr. Corp.*, 437 F.2d 1136, 1139–40 (5th Cir.1971)). Further, a Title VII plaintiff cannot bring any claim in a lawsuit that was not included in his or her EEOC charge. *Zellars v. Liberty Nat. Life Ins. Co.*, 907 F.Supp. 355, 358 (M.D.Ala.1995) (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)).

In Thomas' EEOC Charge, she reported experiencing race and sex discrimination between September 1, 2003 and September 16, 2004. EEOC Charge, Ex. 7 to Defendant's Motion for Summary Judgment with Incorporated Memorandum of Law ("MSJ Brief") [33]. Five of the promotions she claims she should have received, however, occurred prior to September 1, 2003:(1) Ted Hounshell, who was promoted in February 2002; (2) Brian Hutchins, who was promoted in May 2002; (3) Darren Myers, who was promoted in April 2003; (4) David Onyskiw, who was promoted in April 2003, and (5) Dave Carlson, who was promoted in July 2003. Def.'s SMF ¶¶ 117, 124, 134, 158, 166.

BB & B contends that, because these five promotions took place outside the time period identified in Thomas' EEOC Charge, they were not included in her EEOC Charge. MSJ Brief at 6–7. Thus, argues BB & B, Thomas failed to exhaust her administrative remedies with respect to these five and they should not be allowed as part of her failure to promote claim. *Id.*; see *Zellars*, 907 F.Supp. at 358.

Thomas responds that equitable doctrines should apply to allow these five promotions, despite any failure to exhaust administrative remedies with respect to them. Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment ("Response Brief") [40] at 14. Thomas does not, however, explain why her case merits the application of equitable doctrines.[12] In *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111

---

12. The Court notes that the circuits are split on whether a plaintiff's failure to exhaust administrative remedies is subject to equitable doctrines, or whether it is a jurisdictional prerequisite and is therefore not subject to equitable doctrines. Though somewhat unclear as to whether its opinions apply when a plaintiff is suing a private (not governmental) employer, the Eleventh Circuit appears to

hold that exhaustion of administrative remedies is a condition precedent to bringing a Title VII suit, and is therefore subject to equitable doctrines such as equitable estoppel and tolling. *See Forehand v. Florida State Hosp. at Chattahoochee*, 89 F.3d 1562, 1570 n. 17 (11th Cir.1996)("Precedent binding on us ... holds that procedural defects in Title VII suits are subject to equitable modification.");

S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court noted that "[f]ederal courts have typically extended equitable relief only sparingly," such as where a complainant has been "tricked by his adversary's misconduct into allowing [a] filing deadline to pass." Without some reason why the above five promotions should be allowed despite Thomas' failure to include them in her EEOC Charge, the Court declines to apply the exceptional remedy of equitable relief to them.

As Thomas admits that these five promotions occurred prior to September 1, 2003, gives no reason why they should be viewed as "included" in her EEOC Charge, and does not explain why equitable doctrines should apply, the Court finds that Thomas cannot bring these five "failure to promote" claims. The remaining relevant promotions, then, are the five that took place during the time period Thomas identified in her EEOC Charge: (1) Suzanne Wood, (2) Joe Casella, (3) Ray Devilla, (4) Steve White, and (5) Roland Perrelli.

### (2) Three Additional Promotions Fall Outside the Statute of Limitations Period

Title VII also requires an employee aggrieved by discriminatory acts to file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). Thomas filed her charge of discrimination with the EEOC on September 22, 2004. Def.'s SMF ¶¶ 69, 70; *see* EEOC Charge of Discrimination, Ex. 7 to MSJ Brief. Under the 180–day rule, then, Thomas may only recover for discrete acts of discrimination that occurred on or after March 28, 2004 (180 days earlier).[13]

Thomas admits that three of the remaining five promotions occurred prior to March 28, 2004. Specifically, Suzanne Wood was promoted in October 2003, Joe Casella was promoted in December 2003, and Ray Devilla was promoted in January 2004. Def.'s SMF ¶¶ 99, 142, 148. BB & B argues that because these three promotions all occurred before March 28, 2004, they are outside of the 180–day statute of limitations period and are time-barred. Def.'s Brief at 5–6.

Thomas counters that even though the Wood, Casella and Devilla promotions occurred prior to the 180–day statute of limitations period, they are not time-barred because they are part of a larger period of hostile environment harassment. She posits that some of the promotions—namely, those that White and Perrelli received—*did* take place within the 180–day period. Response Brief at 12. Thomas essentially argues that the string of Store Manager promotions constitutes a continuing violation, such that the timely occurrence of the White and Perrelli promotions should allow the otherwise untimely Wood, Casella and Devilla promotions to be "timely" as well.

■ The Supreme Court has held, in a hostile environment case, that when an act of harassment occurs within the 180–day limitations period, a plaintiff may recover for harassment occurring prior to the 180–

*Fouche v. Jekyll Island State Park Authority,* 713 F.2d 1518, 1525 (11th Cir.1983)("[A]ll Title VII procedural requirements to suit are henceforth to be viewed as conditions precedent to suit rather than as jurisdictional requirements.").

**13.** The Hounshell, Hutchins, Myers, Onyskiw and Carlson promotions—barred above because they were not mentioned in Plaintiff's EEOC Charge—also occurred prior to March 28, 2004. It is not only Plaintiff's failure to exhaust her administrative remedies with respect to these claims, then, but also the untimeliness of her EEOC Charge that prevents Plaintiff from seeking relief for them.

day limitations period, because hostile environment claims by their very nature involve repeated conduct. *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 105, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In that same opinion, however, the Supreme Court cautioned that "[d]iscrete acts such as termination, *failure to promote,* denial of transfer, or refusal to hire are easy to identify," and that individual adverse employment actions "constitute[ ] ... separate actionable 'unlawful employment practice[s].'" *Id.* at 114, 122 S.Ct. 2061 (emphasis added). Although acts occurring outside the limitations period may be *related* to those alleged in timely-filed charges, the Court held that "discrete discriminatory acts are not actionable" if they occurred prior to 180 days before filing an EEOC charge. *Id.* at 113, 122 S.Ct. 2061.

If Thomas had pleaded a hostile work environment claim, *Morgan* might apply to permit her to recover for harassing conduct occurring prior to the 180–day limitations period. In her Complaint, however, Thomas does not include a claim of harassment. Under *Morgan,* Thomas' "failure to promote" claim is comprised of individual promotions, each of which constitutes a separate adverse employment action. Thus, with respect to the Wood, Casella and Devilla promotions, which all occurred prior to the 180–day limitations period, Thomas' EEOC Charge was untimely.

█ Thomas argues next that, even if her EEOC Charge was untimely with respect to the Wood, Casella and Devilla promotions, equitable doctrines should apply to excuse their untimeliness. Response Brief at 12–15. Indeed, even when an EEOC Charge is untimely filed, equitable doctrines can apply as a remedy. *See*

*Morgan,* 536 U.S. at 113, 122 S.Ct. 2061 ("As we have held, however, this time period for filing a charge is subject to equitable doctrines such as tolling or estoppel."); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

When equitable tolling applies, it tolls Title VII's statute of limitations period until the date a plaintiff "knew or reasonably should have known that she was being discriminated against." *Carter v. West Pub. Co.,* 225 F.3d 1258, 1265 (11th Cir. 2000). Thomas contends that the 180–day statute of limitations period should be tolled until White and Perrelli were promoted in May and July of 2004, because she did not become aware of any discrimination until this point. Response Brief at 14. She explains that the first few promotions to Caucasian individuals and/or males did not alarm her, but that the pattern of promotions eventually made her "realize what ha[d] been going on and that she may have a cause of action under Federal law for racial discrimination." Response Brief at 14–15. Thus, argues Thomas, the statute of limitations for her EEOC Charge did not begin to run as to *any* of the promotions until Spring or Summer of 2004, and she timely filed her EEOC Charge as to the Wood, Casella and Devilla promotions within the 180 limitations period.

Although Thomas may not have felt compelled to file an EEOC Charge until after White and Perrelli received promotions to Store Manager, the Court finds that this fact alone does not merit equitable tolling. As the Eleventh Circuit has held, "[i]t is not necessary for a plaintiff to know all the facts that support his claim in order to file a claim."[14] *Sturniolo v.*

---

14. In *Sturniolo,* the plaintiff was terminated, allegedly because his employer was eliminating his position due to financial difficulties. *Sturniolo,* 15 F.3d at 1024. It was only after

a much younger employee was hired to fill his former position that the plaintiff believed he had a cause of action for age discrimination. *Id.* at 1025. The Eleventh Circuit held that

*Sheaffer, Eaton, Inc.,* 15 F.3d 1023, 1025 (11th Cir.1994).

In the case at bar, Thomas was aware that Wood, Casella and Devilla had received promotions soon after the promotions occurred.[15] Thomas did not have to wait until White and Perrelli were promoted to learn that individuals outside her protected class had received promotions to Store Manager; rather, she knew "all the facts that support[ed] [her failure to promote] claim" when she believed she was qualified to be Store Manager, learned that Wood, Casella and Devilla were promoted, and knew that they were outside her protected classes.[16] *See Sturniolo,* 15 F.3d at 1025. As such, Thomas "knew or reasonably should have known" that she had a potential discrimination claim as soon as the Wood, Casella and Devilla promotions actually occurred, or shortly thereafter. *See Carter,* 225 F.3d at 1265.

Thomas also argues, however, that equitable tolling should apply to the otherwise untimely Wood, Casella and Devilla promotions because BB & B fraudulently induced her to stay at the company. Response Brief at 15. Thomas contends that BB & B told her she should remain in her position because she was in line to be promoted, but that BB & B never actually intended to promote her. *Id.* She states that because of BB & B's encouragement as to her managerial prospects, she re-

mained at BB & B and did not file an EEOC Charge until September 22, 2004. *Id.*

Indeed, courts have applied equitable tolling when a defendant has "concealed facts supporting a cause of action under Title VII," or misled a plaintiff as to "the nature of his rights under Title VII." *Manning v. Carlin,* 786 F.2d 1108, 1109 (11th Cir.1986); *see also Browning v. AT&T Paradyne,* 120 F.3d 222, 226 (11th Cir.1997)(stating that equitable *estoppel* can apply where an employer has engaged in some form of misconduct to induce an employee not to file an EEOC Charge). If BB & B had, in fact, engaged in misconduct to induce Thomas to delay filing her EEOC Charge, equitable tolling might apply. There is no indication in this case, however, that BB & B told Thomas it would promote her but had no actual intention of doing so.

To the contrary, the parties agree that Thomas was consistently told she would be promoted at some point, and Thomas points to no evidence that this encouragement was a ruse. Pl.'s Dep. at 139; Def.'s SMF ¶¶ 24, 37, 43. BB & B consistently praised Thomas' job performance, raised her salary three times over the course of her three-year career at BB & B, promoted her from Department Manager to Assistant Store Manager, transferred her to

the doctrine of equitable tolling applied to toll the running of the limitations period until the date the plaintiff knew (or should have known) the younger employee had been hired. *Id.* at 1026.

**15.** Pl.'s Dep. at 165–66, 168, 166 (Q: "How quickly after [Wood was promoted] did you find out she had been promoted?"; Thomas: "Immediately.")(Q: "How quickly after [Casella's] promotion did you learn that he had been promoted?"; Thomas: "It may have been a month or so.")(Q: "How quickly after [Devilla's] promotion did you learn that he had gotten the job?"; Thomas: "I knew he

was getting promoted before he got promoted."). Even if it took Thomas one month after Casella's December 2003 promotion to learn he had been promoted, she filed her EEOC Charge more than 180 days after that.

**16.** Thomas is also contradicted by her own deposition testimony, which indicates that she knew or reasonably should have known that she was being discriminated against for "years." Pl.'s Dep. at 224–25 ("[Y]ou could count on half of one hand how many African Americans you saw .... [s]o I honestly felt for years that that's the reason why, you know, I did not get promoted.").

its new high-profile Perimeter store, and granted her request for a lateral transfer when she asked for it. Pl.'s Dep. at 139; Def.'s SMF ¶¶ 25, 27, 45, 46, 33, 34. In October 2003, Thomas' supervisor wrote in her performance review that she was capable of getting "to the next level" within the company "[i]n approximately 6–12 months." Def.'s SMF ¶ 37. Because Thomas resigned before 12 months had passed (having been promoted to Assistant Store Manager but not Store Manager, the position she desired), she can only speculate as to whether she actually would have been promoted or not, had she stayed. In short, Thomas has pointed to no evidence that BB & B's encouragement was false, and barring evidence to this effect, the Court cannot find fraud or misrepresentation requiring the application of equitable tolling.

To summarize, having failed to exhaust her administrative remedies with respect to the Hounshell, Hutchins, Myers, Onyskiw and Carlson promotions, *see supra* page 24, Thomas cannot bring a "failure to promote" claim with respect to those five promotions. Additionally, the statute of limitations operates to bar those five promotions, as well as the Wood, Casella and Devilla promotions, from this suit, because they all occurred prior to 180 days before she filed her EEOC Charge and none merits equitable tolling. *See supra* pages 24–32. Thomas' "failure to promote" claim thus rests on the only two remaining Store Manager promotions: Steve White and Roland Perrelli.

**b. Thomas Has Established a *Prima Facie* Case of Failure to Promote With Respect to the White and Perrelli Promotions**

In order to establish a *prima facie* case of discriminatory failure to promote under Title VII, Thomas must show that: (1) she is a member of a protected class; (2) she was qualified for and applied for the promotion; (3) she was rejected in spite of her qualifications, and (4) the individual who received the promotion is not a member of her protected class. *See Walker v. Mortham*, 158 F.3d 1177, 1193, *reh'g denied*, 167 F.3d 542 (11th Cir.1998); *see also McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Wu v. Thomas*, 847 F.2d 1480, 1483 (11th Cir.1988); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 (11th Cir. 1997).

For the purposes of summary judgment, Defendant concedes that Thomas can establish a *prima facie* case of "failure to promote" with respect to the White and Perrelli promotions. MSJ Brief at 7 ("BB & B concedes for purposes of this motion that Plaintiff can establish a prima facie case"). The next step in the analysis, then, is to determine whether Defendant has articulated a legitimate, nondiscriminatory reason for failing to promote Thomas. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Jones*, 137 F.3d at 1310.

**c. Defendant Has Articulated a Legitimate, Nondiscriminatory Reason for Promoting White and Perrelli Instead of Thomas**

Defendant's burden to articulate a legitimate, nondiscriminatory reason for promoting White and Perrelli instead of Thomas is "exceedingly light." *Smith v. Horner*, 839 F.2d 1530, 1537 (11th Cir. 1988). The Court finds that BB & B has met this burden.

■ BB & B states that when the company chose to promote White to Store Manager in May 2004, it considered White's previous work experience in a "big box" environment (he had been a District Manager in Training for 18 months at Best Buy), his good performance while at BB & B, and his high salary prior to coming to BB & B ($120,000 a year). Def.'s SMF ¶¶ 101, 103. BB & B explains that it need-

ed to put White in a managerial position quickly, because White had prior "big box" experience and a high previous salary. MSJ Brief at 11. BB & B suggests that it needed to maintain his previous salary while reconciling his salary with his responsibilities. *Id.*

BB & B explains that it chose to promote Perrelli to Store Manager in July 2004 because he had previous work experience in a "big box" environment (he was General Manager of The Wiz for one year prior to coming to BB & B), had performed well thus far, and his previous salary at The Wiz was high ($100,000 annually). Def.'s SMF ¶¶ 81, 83. Promoting Perrelli to Store Manager, explains Defendant, supported his high salary because the Buckhead Store was a high-volume store and needed a manager with Perrelli's previous "big box" experience. *Id.* ¶ 88.

In comparison to White and Perrelli, Thomas had never worked in a "big box" store. *See* Pl.'s SMF ¶ 3; Def.'s SMF ¶ 7. Like them, she had performed well, but as compared to them, her previous salary prior to coming to BB & B was much lower ($44,000 annually, as opposed to $120,000 and $100,000 annually). Def.'s SMF ¶ 6.

BB & B explains that it needed to promote White and Perelli to Store Manager positions because they were more experienced and needed managerial positions with more responsibility to justify their high salaries. In short, Defendant has presented evidence that it failed to promote Thomas to the position of Store Manager in May 2004 or July 2004 because other, more qualified individuals were also in line for promotions.

The Court finds that, by explaining why it promoted White and Perelli, BB & B has met its burden to articulate a legitimate, nondiscriminatory reason for failing to promote Thomas. The reasons BB & B offers—Thomas' relative lack of experience and lower previous salary—are both legitimate and nondiscriminatory.

### d. Plaintiff Cannot Establish Pretext

Once an employer has presented significant evidence of a legitimate, nondiscriminatory reason for its adverse decision, a plaintiff must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination in order to avoid summary judgment. *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1228 (11th Cir.1993). In the context of a discrimination claim based on a "failure to promote," the Eleventh Circuit has held that:

> [A] plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race. We have explained, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where ... the reason is one that might motivate a reasonable employer.

*Brooks v. County Comm. of Jefferson County, Ala.,* 446 F.3d 1160, 1163 (11th Cir.2006)(quoting *Alexander v. Fulton County,* 207 F.3d 1303, 1339 (11th Cir. 2000) (internal quotations omitted)); *see also Chapman v. A.I. Transport,* 229 F.3d 1012, 1030 (11th Cir.2000) (a plaintiff can not successfully establish pretext "by simply quarreling with the wisdom of that reason").

Thus, in order to establish pretext with respect to a claim involving a failure to promote, "[a] plaintiff must show that the disparities between the successful applicant's and her own qualifications were

'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks*, 446 F.3d 1160, 1163 (11th Cir. 2006) (*quoting Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir.2004)); *see also Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 454, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006) (*per curiam*) (approving this language from *Cooper*).

Plaintiff offers two arguments as to why Defendant's reasons for failing to promote her are pretextual. First, she states that she was more qualified than the individuals who did receive the promotions, and second, she points to evidence that other African–American BB & B employees felt the company had discriminated against them in the past. For the reasons discussed below, the Court finds Thomas has failed to introduce significantly probative evidence to demonstrate that BB & B's legitimate, nondiscriminatory reasons for not promoting her are merely pretext.

First, Thomas contends that she was more qualified to be promoted to Store Manager than either White or Perrelli. She states that when White and Perrelli were promoted, she had worked at BB & B for sixteen months longer than either of them, and suggests that her seniority within the company made her more qualified to be Store Manager. Def.'s SMF ¶¶ 75, 76. Thomas also argues that she was more qualified than Perrelli in particular, because she had held the position of Store Manager of Operations while he had not, and she had an "exemplary personnel file," whereas he had violated BB & B policies on several occasions. Pl.'s SMF ¶¶ 30, 31.

While Thomas may disagree with the factors BB & B uses to decide whom to promote, attacking the (nondiscriminatory) factors themselves cannot demonstrate pretext. *See Chapman*, 229 F.3d at 1030 (stating that a plaintiff cannot establish that an employer's reasons are pretextual "by simply quarreling with the wisdom of that reason"). Thomas might feel that seniority *ought* to be a factor, but seniority with BB & B is not one of its criteria used in making promotion decisions. *See* Dimino Aff. at Ex. 8 to MSJ Brief at 2–3; Def.'s SMF ¶ 75; Response to Def.'s SMF ¶ 75. Thomas' relative seniority at BB & B is thus irrelevant to her qualifications as Store Manager. Moreover, Thomas may dislike BB & B's emphasis on previous "big box" experience or prior salary when making promotion decisions, but she nevertheless acknowledges that both White and Perrelli had more prior "big box" experience and higher previous salaries than her. Response to Def.'s SMF ¶¶ 81–87, 101–109.

Regardless, even if Thomas could prove that she was better qualified than White or Perrelli to be Store Manager, this alone would not suffice to show pretext. *See Brooks*, 446 F.3d at 1163 ("a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted"). Rather, Thomas must show that she was so much more highly qualified than White or Perrelli "that no reasonable person, in the exercise of impartial judgment, could have chosen [them] over the plaintiff." *Brooks*, 446 F.3d at 1163.

Viewing Thomas' qualifications in comparison to White's and Perrelli's, the Court cannot find that "no reasonable person" would have chosen to promote White or Perrelli instead of Thomas. Thomas had worked at BB & B for over two years but never worked in a "big box" store prior to that, and she came to BB & B with a salary of $44,000. White and Perrelli, on the other hand, had each worked at BB & B for just over one year, but had experience in other "big box" stores prior to

coming to BB & B and left their prior jobs for BB & B with salaries of $100,000 or more. Thomas' only arguable relative strength to White and Perrelli was her seniority within the company, but BB & B has said it does not consider seniority when making promotion decisions. Def.'s SMF ¶ 75. Thomas has therefore failed to demonstrate that, on the basis of her seniority, she was so much more qualified for a Store Manager promotion that BB & B's legitimate, nondiscriminatory reason for promoting White and Perrelli was pretextual.

For her second pretext argument, Thomas points to affidavits from three former African–American BB & B employees who believe that the company discriminated against them because of their race. Response Brief at 2–4. In their affidavits, Alan Robinson, Emanuel Washington and Jeff Jones state that they perceived race discrimination while employed at BB & B. *See* Exs. A, B and C to Response Brief. All three men allege that they witnessed the company's failure to promote African–American employees, while Washington and Jones state that BB & B passed them over personally for promotions in favor of less-qualified Caucasian candidates.[17]

Thomas attempts to demonstrate discriminatory intent based solely on these three anecdotal accounts. Such accounts, however, do not constitute statistical evidence and are no more probative in this case than would be anecdotal evidence from other employees to the effect that they never witnessed discrimination and thought Plaintiff to be less qualified than others. As a result, it would probably be inadmissible at trial under Rule 403 of the

Federal Rules of Evidence, which excludes relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

Here, the question of whether Robinson, Washington or Jones felt BB & B was discriminating against African–American employees, or whether the company failed to promote these men in particular, is not only minimally relevant to whether the company's legitimate, nondiscriminatory reasons for not promoting Thomas are merely pretext, but would also require separate fact-finding mini trials to determine whether BB & B actually discriminated against these other individuals. *See McWhorter v. City of Birmingham*, 906 F.2d 674, 679 (11th Cir.1990)(holding that the district court did not abuse its discretion in excluding testimony from employees other than the plaintiff, who claimed they had also been harassed, because the admission of other employees' grievances "could have resulted in a series of minitrials centering on the employment history of each [employee]"). Because introducing other employees' allegations would only delay the proceedings and confuse a jury into focusing on issues extraneous to Thomas' case, the portions of the Robinson, Washington and Jones affidavits in which they accuse BB & B of discrimination, either generally or personally, are not competent evidence designating "specific facts showing that there is a genuine issue for trial" as to whether Defendant's rea-

---

17. *See* Robinson Aff. at Ex. A to Response Brief, ¶ 3 ("I often observed while working for [BB & B] the promotion of Caucasian employees over equally qualified, if not more qualified, African American employees."); Washington Aff. at Ex. B to Response Brief, ¶ 6 ("I was initially hired at [BB & B] as a Department Manager and during the entire time I was there ... I was never promoted."); Jones Aff. at Ex. C to Response Brief, ¶ 4 ("[BB & B] promoted a white male over me to Store Manager, even though this white male had never managed any company before being employed by [BB & B].").

sons for not promoting Plaintiff were a pretext for discrimination. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

If Thomas wished to present evidence that BB & B had a practice of promoting less-qualified Caucasian employees over more-qualified African–American employees, such evidence could be admissible to show pretext, but only if it were statistically significant. *See Forehand v. Florida State Hosp.*, 89 F.3d 1562, 1575 (11th Cir.1996)(stating that statistical evidence in a disparate treatment case "must be finely tuned to compare the employer's relevant workforce with the qualified populations in the relevant labor market")(internal quotation marks omitted) (citation omitted). Here, while Thomas offers the testimony of three individuals who allege similar racial discrimination, she offers no evidence of how many African–Americans as compared to Caucasians were qualified and applied to be promoted, how many promotions were available, or what percentage of those promotions went to employees of each race. Without such evidence to impart statistical relevance to Robinson's, Washington's and Jones' anecdotal accounts, the mere accusations from these three former employees are insufficient to raise an inference of discrimination.

In their affidavits, the men also state that they believe Thomas should have been promoted to Store Manager.[18] As pretext cannot be shown merely by demonstrating that a plaintiff is qualified to be promoted, but that no reasonable impartial person would promote the chosen individual over the plaintiff, the opinions contained in the affidavits also cannot establish pretext. Regardless of whether Robinson, Washington or Jones might have believed Thomas was qualified for a promotion, they were not decisionmakers in this case. The only relevant inquiry is whether BB & B chose not to promote Thomas because she was African–American.[19]

In sum, Thomas has argued first that she was more qualified to be promoted than White or Perrelli, and second, that other African–American former employees felt discriminated against and believed Thomas should have been promoted to Store Manager. The Court finds that Thomas has failed to show that "no reasonable person in the exercise of impartial judgment" could have promoted White and Perrelli over Thompson. Furthermore, others' allegations about discrimination by Defendant do not establish that BB & B's reasons for not promoting Thomas are pretextual.

Having failed to demonstrate that BB & B's legitimate, nondiscriminatory reasons for promoting White and Perrelli to Store Manager were pretextual, Thomas cannot

---

18. Robinson Aff. ¶ 4 ("There was no legitimate reason not to promote Jessica Thomas to Store Manager and yet she was continually passed over for promotion."); Washington Aff. ¶ 5 ("Based upon my personal observations of her work, Jessica had all of the skills and training necessary to be a Store Manager for [BB & B]."); Jones Aff. ¶ 5 ("Based upon my personal observations of her work, Jessica had all of the skills and training necessary to be a Store Manager for [BB & B].").

19. Defendant has filed an Objection to the Affidavits of Jeff Jones, Emanuel Washington and Alan Robinson [51], arguing that all three affidavits should be disregarded, and outlining why each paragraph of each affidavit would be inadmissible at trial. The affidavits are conclusory and largely irrelevant, and portions of them are inadmissible, as discussed *supra*. The Court declines, however, to strike them from the record entirely, simply because they are generally unhelpful.

Accordingly, while the affidavits are insufficient to establish that BB & B's legitimate, nondiscriminatory reasons for failing to promote Thomas were merely pretext, as discussed *supra*, Defendant's Notice of Objection [51] is **OVERRULED.**

survive summary judgment on her "failure to promote" claim. The Court thus **RECOMMENDS** that Thomas' failure to promote claim, expressed in Count One of her Complaint, should be **DISMISSED**.

### 2. Thomas Was Not Constructively Discharged When She Voluntarily Resigned

Thomas also asserts a constructive discharge claim in Count One of her Complaint. Complaint ¶ 18. She contends that because BB & B discriminatorily passed her over for promotions, when she submitted her voluntary resignation to BB & B in September 2004 she did so because she "had no choice but to resign to get out of the cycle of discrimination." Response Brief at 11–12.

To prove constructive discharge, a plaintiff must show that her "working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign." *Kilgore v. Thompson & Brock Mgmt., Inc.,* 93 F.3d 752, 754 (11th Cir.1996). There must be a "high degree of deterioration in working conditions, approaching the level of intolerable." *Hill v. Winn–Dixie,* 934 F.2d 1518, 1527 (11th Cir.1991).

The Court finds that Thomas has failed to present sufficient evidence that her working conditions were so intolerable as to constitute constructive discharge. Thomas has not brought a harassment or hostile work environment claim, nor has she alleged that she experienced any harassment while at BB & B. She has not alleged that her working conditions were in any way unpleasant. Thomas simply states that she became disappointed when she was not promoted to Store Manager quickly enough, and that she quit because she felt she had been discriminated against. Suffering disappointment, however, does not rise to the level necessary for constructive discharge.

Thomas suggests, however, that resigning solely on the basis of a discriminatory failure to promote could give rise to a legitimate constructive discharge claim. While the Eleventh Circuit has said in passing that discriminatory failure to promote "would be relevant to the issue of whether [a plaintiff] was constructively discharged," that court went on to say that evidence of discriminatory failure to promote is not necessarily sufficient to show constructive discharge. *Wardwell v. Sch. Bd. of Palm Beach County, Fla.,* 786 F.2d 1554, 1557 (11th Cir.1986).

Plaintiff simply has not produced evidence that she experienced an adverse employment action as a result of her voluntary resignation. Accordingly, this Court **RECOMMENDS** that Thomas' constructive discharge claim, expressed in Count One of her Complaint, be **DISMISSED**.

### D. EQUAL PAY ACT CLAIM

Thomas claims next that Defendant discriminated against her on the basis of her sex when it paid her less than it paid males for performing jobs which required equal skill, effort, and responsibility, in violation of the Equal Pay Act ("EPA").

The Equal Pay Act provides, in relevant part:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system;

(ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. . . .

29 U.S.C. § 206(d)(1).

 To set forth a *prima facie* case of discrimination under the EPA, it is the Plaintiff's initial burden to present evidence that she was paid less than a worker of the opposite sex who held a job requiring equal skill, effort and responsibility to the job held by Plaintiff, and who performed that job under similar working conditions to those of Plaintiff.[20] *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *see Steger v. General Elec. Co.,* 318 F.3d 1066, 1077–78 (11th Cir.2003); *Irby v. Bittick,* 44 F.3d 949, 954 (11th Cir.1995). Once a plaintiff establishes a *prima facie* case as to even one comparator, the burden shifts to the defendant to prove that the difference in pay is justified by one of the exceptions specified by the EPA. *Mulhall,* 19 F.3d at 590; *Meeks,* 15 F.3d at 1018.

Although Thomas included an Equal Pay Act claim in her Complaint, *see* Complaint ¶¶ 41–44, she does not explain or expand upon it in her Response Brief. She includes a heading titled "Equal Pay Act Claims," but underneath that heading includes less than one page of text in which she merely cites law. Response Brief at 16. Having failed meaningfully to respond to Defendant's Motion for Summary Judgment on this claim, Thomas has abandoned it and BB & B is entitled to summary judgment. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995)(explaining that when a party fails to address a claim at summary judgment, the claim has been abandoned).

Even if Thomas' response were considered sufficient to preserve her claim, she has failed to come forth with facts demonstrating the existence of a genuine issue for trial, in the face of BB & B's contention that there is no dispute of material fact. See MSJ Brief at 30–39; Response Brief at 16. While Thomas herself states that she must show "that [her] employer paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort and responsibilities, and which are performed under similar working conditions," see Response Brief at 16, Thomas makes no arguments and cites no evidence as to any of these things. She does not identify which male employees she believes were paid more than her, does not point to evidence that male employees were indeed paid more than her, and, in fact, does not assert what her salary was in comparison to male employees who performed equal work to hers.

With Thomas having failed to come forth with specific facts demonstrating the existence of any issue for trial in the face of Defendant's Motion for Summary Judgment, and having appeared to have abandoned that claim entirely, the Court **RECOMMENDS** that her Equal Pay Act Claim in Count Four of her Complaint be **DISMISSED.**

### E. STATE LAW CLAIMS

Next, Thomas asserts several state law claims: negligent hiring, training and retention (Count Two) and intentional infliction of emotional distress (Count Three). Complaint ¶¶ 34–40. Her husband, Markel Thomas ("Markel"), asserts a state law claim of loss of consortium. *Id.* ¶¶ 45–48. Because the Court has determined that BB & B is entitled to summary judgment

---

**20.** Unlike Title VII, the EPA does not require the exhaustion of administrative remedies by filing charges with the EEOC. *Miranda v. B &* *B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1527 (11th Cir.1992).

on all of Thomas' federal claims, this Court no longer has federal question jurisdiction over this action, and must determine whether to exercise supplemental jurisdiction over Thomas' (or Markel's) state law claims.

This case was brought in this Court on the basis of federal question jurisdiction under 28 U.S.C. § 1331; the Court has only supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. The Supreme Court has explained that federal district courts should not entertain supplemental jurisdiction over state law claims as a matter of course:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction."). The Eleventh Circuit recently affirmed that, when all claims lending original jurisdiction to a case have been dismissed, this "is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." *Parker v. Scrap Metal Processors, Inc.,* 468 F.3d 733, 743 (11th Cir.2006).

In the instant action, Thomas has asserted several different tort claims under Georgia law. Her husband, Markel, asserts a state law tort claim without asserting any federal claim. The Court concludes that the resolution of these claims would require an examination of factual allegations that are not material to Thom-

as' federal claims, and therefore, those claims would be better served in a state court that has a "surer-footed reading of applicable law." *See Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130.

Accordingly, the undersigned **RECOMMENDS** that the District Court decline to exercise supplemental jurisdiction over Thomas' remaining state law claims, as well as Markel's state law claim, and **RECOMMENDS** that Counts Two, Three, and Five of Plaintiffs' Complaint be **DISMISSED** without prejudice. *See* 28 U.S.C. § 1367(c)(3).

## III. RECOMMENDATION

For all the above reasons, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment [33] be **GRANTED** and that judgment be entered in favor of Defendant on Counts One and Four of Plaintiffs' Complaint. Additionally, the undersigned **RECOMMENDS** that Counts Two, Three and Five be **DISMISSED WITHOUT PREJUDICE.** Defendant's Objection to the Affidavits of Jeff Jones, Emanuel Washington and Alan Robinson [51] is also **OVERRULED.**

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED.**